Anthony R. MARTIN–TRIGONA, Petitioner,

v.

FEDERAL RESERVE BOARD, Respondent, Bank America Corporation, Intervenor.

No. 73–1941.

United States Court of Appeals, District of Columbia Circuit.

Dec. 6, 1974.

Rehearing Denied Feb. 24, 1975.

As Modified Jan. 14, 1975.

Anthony R. Martin-Trigona pro se.

Carla A. Hills, Asst. Atty. Gen., Robert E. Kopp, and Michael Kimmel, Attys., Dept. of Justice, were on the brief for respondent.

Timothy B. Dyk and Noel Anketell Kramer, Washington, D. C., were on the brief for intervenor, Bankamerica Corp.

BAZELON, Chief Judge, DANAHER, Senior Circuit Judge, and JUSTICE,* District Judge for the Eastern District of Texas.

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

BAZELON, Chief Judge:

Bankamerica Corporation, a bank holding company subject to the Bank Holding Company Act of 1956, 12 U.S.C. § 1841 et seq. (1970), intends to merge with GAC Corporation, a non-banking company. Mergers between bank, holding companies and non-banking companies are generally forbidden by § 4 of the Bank Holding Company Act, 12 U.S.C. § 1843 (1970), but § 4(c)(8) permits the Federal Reserve Board to determine whether certain non-banking activities are sufficiently related to banking activities such that the purposes of § 4 would not be fulfilled by prohibiting mergers of companies engaged in such activities with bank holding companies. The class of activities performed by GAC Corporation have been determined to be sufficiently related to banking to permit, in most circumstances, a merger between companies performing such activities and a bank holding company.[1] However, each proposed merger between a non-banking company and a bank holding company is to be considered on its individual merits.[2] On consideration of Bankamerica's request for approval of its proposed merger with GAC, the Reserve Board first held that the merger was not consistent with the Act and then on reconsideration held that it was and approved it.[3] The Reserve Board had before it the adverse comments of the Antitrust Division of the Department of Justice.

Pursuant to the Bank Holding Company Act,[4] the Reserve Board gave public notice of the proposed merger and requested comments from interested parties both on the merits of the merger under the Act and on the need for a trial-type hearing to consider those mer-

its. Petitioner Martin-Trigona responded to this notice, stating generally that the merger was bad for the country and that a full adversary hearing was required. The Reserve Board requested petitioner to state what particular interest he had in the transaction and to describe what kinds of evidence he would adduce at any hearing into the merits of the merger. The petitioner refused to comply with this request. Therefore, the Board determined that petitioner had no standing to intervene in the administrative proceedings. The Board apparently did not consider petitioner's request for a hearing.[5] Petitioner seeks review in this Court of the Reserve Board's refusal to permit intervention in the administrative hearing and from the "denial" of his request for a hearing.[6] We treat this as a petition to set aside the Board's prior order permitting the merger on the grounds that the Board both impermissibly denied intervention and denied a full hearing on the merits of the merger.

■ The Reserve Board argues against the petition that Martin-Trigona has no standing since he has not alleged any particularized injury to himself or his property flowing from the merger. The Board's standing argument applies both to petitioner's standing before this Court and to his standing before the Board's own proceedings. We first note the salient principles of standing as recently explicated by the Supreme Court. First, the plaintiff must allege that the "challenged action has caused him injury in fact, economic or otherwise. . . ."[7] Second, this alleged injury in fact must be "arguably within the zone of interests . . . protected or regulated by the statute . . . in question."[8] Furthermore, the party

---

1. 12 C.F.R. § 225.4(a)(1) (1974).

2. *Id.* § 225.4(b).

3. *See* Bankamerica Corp., 38 Fed.Reg. 22578 (FRB 1973); *id.,* 38 Fed.Reg. 21317 (FRB 1973).

4. 12 U.S.C. § 1843 (1970) implemented in 12 C.F.R. § 225.4(b)(2) (1974).

5. *See* Letter of June 26, 1973, reprinted in the Record at 886–67 which denies petitioner's request for a hearing because of his failure to

show injury in fact, his failure to specify what he would show at a hearing and his failure to demonstrate why his showing could not be made in written form.

6. 12 U.S.C. § 1848 (1970).

7. Association of Data Processing Serv. Org. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

8. *Id.* at 153, 90 S.Ct. at 830, 25 L.Ed.2d 184.

seeking review may not merely allege the existence of an injury, but must allege "facts showing that he is himself adversely affected" by the challenged action.[9] For purposes of this decision, we hold that these tests apply both to standing before this Court and standing before an administrative agency.[10]

 Clearly competitors of either the bank holding company or the non-banking company would be within the zone of interest of § 4 of the Bank Holding Company Act, if they allege injury to their business resulting from a proposed § 4 merger.[11] If this is so, we would have no difficulty holding that a potential competitor would also be within the zone of interest of § 4, if that potential competitor may realistically be viewed as a possible entrant.[12] The more difficult question concerns whether consumers of the banking services of the parties to the proposed merger or of the type of banking services provided by those parties would be within the zone of interest of § 4. This question poses in turn the question whether the Federal Reserve Board is required under § 4 to consider the anti-competitive effects of a merger between a bank holding company and a non-banking company. If the Board is so required, then consumers would have standing to challenge a Board action under § 4 both before the Board and in the courts to the extent the consumers would otherwise have standing under the anti-trust laws.[13]

9. Sierra Club v. Morton, 405 U.S. 727, 736–740, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972). *See also* United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

10. *See* Office of Communications of United Church of Christ v. FCC, 123 U.S.App.D.C. 328, 359 F.2d 994, 1000 n. 8 (1966); National Welfare Rights Org. v. Finch, 139 U.S.App. D.C. 46, 429 F.2d 725, 732 & n. 27 (1970). *See also* L. Jaffe, Judicial Control of Administrative Action 524–25 (1965). We have no occasion in this case to determine whether the different policies applicable to standing before this Court and before an administrative agency might in a different context require different concepts of standing. *See* Shapiro, Some Thoughts on Intervention Before Courts, Agencies and Arbitrators, 81 Harv.L.Rev. 721, 764–67 (1968).

11. *See* 12 U.S.C. § 1850 (1970); Association of Data Processing Serv. Org. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); National Ass'n of Securities Dealers, Inc. v. SEC, 136 U.S.App.D.C. 241, 420 F.2d 83, 97–100 (1969), rev'd on other grounds, 401 U.S. 619, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) (Bazelon, C. J. concurring). *See also* Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970). Of course, if it is subsequently determined that the Reserve Board must take into account antitrust considerations, then competitor standing would be appropriate on the basis of that interest as well.

12. *See* Marine Space Enclosures, Inc. v. Federal Maritime Comm'n, 137 U.S.App.D.C. 9, 420 F.2d 577, 590–591 (1969). *Cf.* Woods Exploration & Producing Co. v. Aluminum Co. of America, 438 F.2d 1286, 1310 (5th Cir.

1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); Martin v. Phillips Petroleum Co., 365 F.2d 629, 633 (5th Cir.), cert. denied, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966); Waldron v. British Petroleum Co., 231 F.Supp. 72, 81–82 (S.D.N.Y. 1964). *See also* Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) and the various "potential competition" cases cited and discussed in United States v. Falstaff Brewing Corp., 410 U.S. 526, 558–562, 93 S.Ct. 1096, 35 L.Ed.2d 475 (1973) (Marshall J. concurring in the result). It is settled that anti-competitive practices forbidden by § 7 of the Clayton Act may give rise to a private damage action under § 4 of the Clayton Act. *See* Gottesman v. General Motors Corp., 414 F.2d 956 (2d Cir. 1969). Thus any person who could bring such a private damage action would have standing before an administrative agency to object to such anti-competitive practices.

13. *See* State of West Va. v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir. 1971), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1972); *cf.* the reasoning of Hanover Shoe Co. v. United Shoe Mach. Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). *See generally* In re Multi-District Air Pollution, 481 F.2d 122 (9th Cir.), cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973); Bergstrom, The Private Litigant's Standing to Sue, 7 Antitrust Bull. 3 (1962); Comment, Standing to Sue for Treble Damages under Section 4 of the Clayton Act, 64 Colum.L.Rev. 570 (1964). For further authority, *see* Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 261–266, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). If § 4 of the Bank Holding Company Act requires the Reserve Board to consider anti-competitive effects, then certainly those

It is not clear whether the Board should consider the anti-competitive effect of § 4 mergers. The Board is expressly obligated under § 3 of the Bank Holding Company Act[14] and under the parallel Bank Mergers Act[15] to review the anti-competitive effects of mergers of member banks and of bank holding companies. But this obligation does not directly apply to § 4 mergers.[16] We are not informed at this time what reasons if any should prevent the Reserve Board from applying the statutory scheme under § 3 and the Bank Mergers Act to § 4 mergers. We do note that the legislative history seems to indicate that anti-competitive considerations undergird § 4 as well as § 3[17] and that antitrust policy is of such national importance that regulatory agencies should apply that policy *sua sponte* in order to discharge their duty to represent the public interest.[18] Furthermore, the Board is given express authority under 12 U.S.C. § 1843(c)(8) to apply anti-trust considerations to § 4 mergers. This is, to be sure, an authority not fully parallel to the authority granted by the Bank Holding Company Act and the Bank Mergers Act, both of which assume administrative application of the standards of § 7 of the Clayton Act. However, the authority of § 1843(c)(8) may be sufficient to authorize consumer

standing before the Board. Under the view we take of this case, it is unnecessary to resolve this issue and we would be hesitant to do so in any event without the benefit of the Reserve Board's views. We have, however, felt it necessary to fully address the issues in this case since the petitioner is proceeding *pro se*.

Assuming for purposes of decision that petitioner, as a potential competitor or as a consumer of credit services, might represent an interest within the zone of interests protected by § 4, it is abundantly clear that petitioner has not particularly alleged an injury in fact within this zone. As stated earlier, this he must do before he may assert standing.[19] The only allegations of injury in fact are some conclusory statements in petitioner's brief in this Court[20] which are clearly not sufficient to obtain standing before the Board and are not, we hold, sufficient to obtain standing in this Court. It follows that petitioner Martin-Trigona has no standing at present to seek review of the Board's order and no standing to request participation as a party in the Board's proceedings in this case. His petition for review is therefore dismissed.[21]

So ordered.

who suffer injury from those anticompetitive effects would be within the zone of interest of § 4.

**14.** 12 U.S.C. §§ 1842, 1849(b) (1970).

**15.** 12 U.S.C. § 1828(c) (1970).

**16.** *See* 12 U.S.C. § 1849 (1970).

**17.** *See* S.Rep.No. 1095, 84th Cong., 1st Sess., 1956 U.S.Code, Cong. & Admin.News 2482, 2483, 2486, 2495. We, of course, note that immunity from anti-trust policy is not lightly inferred. *See* 12 U.S.C. § 1849(a) (1970); United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). *See also* cases cited and discussed United States v. Phillipsburg Nat'l Bank & Trust Co., 399 U.S. 350, 90 S.Ct. 2035, 26 L.Ed.2d 658 (1970).

**18.** Marine Space Enclosures, Inc. v. Federal Maritime Comm'n, 137 U.S.App.D.C. 9, 420

F.2d 577, 585 (1969). *See* City of Lafayette v. SEC, 147 U.S.App.D.C. 98, 454 F.2d 941, 948 (1971), aff'd sub nom. Gulf States Utilities Co. v. FPC, 411 U.S. 747, 758–762, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973).

**19.** *See* note 9 *supra*.

**20.** Brief for Anthony R. Martin-Trigona, at 15–16.

**21.** This dismissal of Martin-Trigona's petition for review is without prejudice to his seeking reconsideration of the Reserve Board's order denying intervention and a hearing. *See* 12 C.F.R. § 262.3(g)(5) (1974). In such a petition for reconsideration Martin-Trigona could present facts indicating his stake in the merger and facts that should require a hearing. Appeal from an order denying reconsideration would seemingly be proper under 12 U.S.C. § 1850 (1970).