**James YATES, et al.**

v.

**CHARLES COUNTY BOARD OF EDUCATION, et al.**

**No. CIV. JFM–02–380.**

United States District Court, D. Maryland.

Aug. 1, 2002.

Wayne Darryl Steedman, Ellen A. Callegary, Callegary & Steedman, PA, Baltimore, MD, for Plaintiffs.

Edmund J. O. Meally, Eric William Gunderson, Hodes Ulman Pessin and Katz PA, Towson, MD, for Defendants.

## OPINION

MOTZ, District Judge.

This case presents the question of whether a local school board, obligated to provide a free appropriate education to a disabled child under the Individuals with Disabilities Act, can seek what is known as a "due process hearing" before an administrative law judge regarding its decision not to place the child in a private school where, after the board's decision was made, the child's parents unilaterally withdrew him from the public school system, placed him in a private school, and reserved the right to pursue a claim against the board for tuition and transportation costs. The ALJ from whose decision this appeal is taken answered that question in the negative. For the reasons that follow, I will reverse the ALJ's decision.[1]

### I.

Adam Yates has been diagnosed with autism and is eligible for special education and related services under the IDEA and Maryland law. Under an Individual Education Plan ("IEP") dated October 17, 2000, the Charles County Public Schools ("CCPS") agreed to place Adam, at public expense, at the Kennedy Kreiger School, a private institution, from January 2001 through July 2001. At a subsequent IEP meeting held on May 14, 2001, CCPS proposed that Adam be placed at the Mitchell Elementary School in Charles County for the 2001–2002 school year. Adam's parents disagreed with this proposal. On July 19, 2001, in accordance with applicable law, see Code of Maryland Regulations (hereafter "COMAR") § 13A.05.01.16B(3) & 20 U.S.C. § 1412(a)(10)(C), they notified CCPS of their decision to reject the offered placement. By that time, Kennedy Kreiger had determined that Adam should not return to its program, and the Yates' advised CCPS of their intention to enroll Adam at another private institution, the Forbush School, for the 2001–2002 school year. The Yates' requested that CCPS provide funding and transportation for Adam at the Forbush School.

The IEP team met again on August 15, 2001. During this meeting the Yates' reiterated a concern they had expressed that CCPS had not given them and their experts an opportunity to observe the class in which CCPS intended to place Adam. They also renewed their request for public funding of Adam's tuition and transportation costs. The IEP meeting ended without resolution. After subsequent communications during which the Yates' declined to withdraw their claim for reimbursement, CCPS requested a "due process hearing" so that the dispute between CCPS and the Yates' concerning Adam's placement could be decided by an ALJ. A hearing was scheduled for October 2001. Prior to the hearing, the Yates' filed a motion to dismiss on the ground that CCPS's request was premature because the Yates' had not yet filed any claim for reimbursement.[2] On October 9, 2001, the

---

1. The parents also seek to recover their attorneys fees. Since I am ruling against the parents on the substance of the appeal, I need not decide whether the ALJ's ruling granting their motion to dismiss was an "enforceable judgment" making them "prevailing parties" entitled to recover fees. See S–1 & S–2 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir. 1994).

2. In the memorandum they submitted in support of their motion for summary judgment in this court, the Yates' stated that although they still have not yet filed any reimbursement claim, they have decided to do. Pls.' Mem. in Support of Cross–Motion for Summary Judgment, at 15 n. 3. The memorandum was filed on June 3, 2002, well after CCPS made its placement decision for the 2001–2002 school year and well into the period that develop-

ALJ rendered his decision finding that there was no pending case or controversy for him to decide and that CCPS lacked standing to file a due process request.

## II.

■ The ALJ's opinion contains a thorough discussion of the doctrine of standing. However, the opinion proceeds from the erroneous premise that the same considerations underlying the standing doctrine in judicial proceedings apply in the administrative hearing context. They do not. As the Yates' acknowledge, it is a "familiar rule that an administrative agency is not bound by Article III or prudential judicial tests of standing." Pls.' Mem. in Support of Cross–Motion for Summary Judgment, at 16. *See Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 74 (D.C.Cir.1999).

■ Under the applicable regulations, CCPS's standing to request a hearing before an ALJ to resolve its dispute with the Yates' concerning the proper placement of Adam for the 2001–2002 year is clear. The regulations expressly provide that either "[a] parent or a public agency may initiate a hearing" before an ALJ when there is a dispute about a child's educational placement. *See* 34 CFR § 300.507(a)(1); COMAR § 13A.05.01.15C(1). Faced with this unequivocal language, the Yates' challenge the regulations on the ground that permitting a school board to demand a due process hearing provides a means for the board to "defeat" and "usurp" the right of parents to a unilateral placement in a nonpublic school and possible reimbursement

for that placement. *See generally School Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 372, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

It may be, as the Yates' complain, that a school board's right to have a placement dispute timely resolved by an ALJ inconveniences parents like themselves who would like to make a unilateral placement of their child in a private school and litigate the question of their right to reimbursement at a time of their own choosing. That fact alone, however, hardly provides a basis for judicial nullification of the regulations creating the board's right to demand a due process hearing.[3] To the contrary, the regulations are wholly consistent with the terms, purposes, and policy underpinnings of the IDEA, and a court's failure to uphold them for the convenience of a child's parents would constitute an arbitrary exercise of its own power.

Under the IDEA state and local educational agencies are required to involve interested parents and consider their views in making placement decisions. 20 U.S.C. § 1414(f). However, parents who seek public funding for their child's special education possess no automatic veto over a school board's decision. The very premise of the IDEA is that the duty to develop individualized education programs and to make placement decisions resides in the public educational agencies themselves. *See, e.g.*, 20 U.S.C. §§ 1412(a)(10)(B)(i), 1412(a)(10)(C), & 1414(a)(1); 34 CFR §§ 300.300 & 300.343(a). Necessarily con-

---

ment of an IEP for the 2002–2003 should have been begun. That fact highlights the difficulties a school board faces if it cannot request a due process hearing and the timing of events is left solely to the parents.

**3.** Of course, if the parents choose to take their child out of the public school system, pay the

private school tuition and related expenses themselves, and relieve the school board of its statutory obligations by agreeing not to seek reimbursement, they have a right to do so. *Cf. Letter to Gagliardi*, 36 IDELR 267 (OSERS, Nov. 5, 2001).

comitant with that duty is the existence of the opportunity and the power to perform it. If parents were able to withdraw their child from the public school at which the school board determined he could receive a free appropriate public education for the duration of a school year and insulate their action from prompt review by delaying their request for a due process hearing on their reimbursement claim, the board's fulfillment of its statutory obligations would be impaired in two critical respects. First, during the course of the then current school year, the board would not be providing the child an education at the school it had determined to be appropriate. Sec-ond, the teachers who would be providing information for consideration in developing the following year's IEP based upon personal knowledge of the child's most recent academic performance would be from the school chosen by the parents, not the one selected by the board.[4] In both instances, decision-making authority would be transferred from the board, upon whom the statutory duty to make the decisions is imposed, to the child's parents who, until and unless they opt out of the IDEA process by waiving their entitlement to public benefits, have an important but merely consultative role in the placement decision.[5]

---

4. I recognize that a school board's initiation of a due process hearing may not cure the problems faced by the board if delays occur in the scheduling of the hearing and the issuance of the ALJ's decision. The possibility of administrative delay, however, provides no justification for shifting power to affect decisions from school boards to parents. Moreover, it should be presumed that state officials will perform their duties expeditiously and that the administrative process will run smoothly. If they do and if the board requests a hearing before or near the beginning of the school year, the parties should have the benefit of the ALJ's ruling before the commencement of the second semester of that year. Therefore, if the ALJ finds in favor of the board, the parents, depending upon the contractual relationship they have entered into with the private school, may decide to withdraw their child from that school and accept the board's proposed placement. In that event, the IEP for the following year will be developed with information provided by the teachers at the school where both the board and the ALJ have determined he can received a free appropriate public education.

5. Invalidating the regulations providing for a prompt due process hearing by an ALJ at the initiative of a school board would have two other adverse effects. First, in preparing budget forecasts, a responsible agency should have the most accurate information that can be made available to it. If a dispute between a school board and a child's parents is not promptly resolved, during the budgetary pro-cess the board cannot predict with any degree of certainty whether public funds will have to be expended to pay a reimbursement claim from the prior year and a private school tuition for the following year.

Second, as can be attested by any judge who has handled a single case involving both a claim for reimbursement from a prior year and a claim challenging the board's proposed placement for the following year, the entangling of the different issues presented by the different claims makes the litigation unnecessarily prolix. Theoretically, the success (or lack of success) of a child in the school where the parents unilaterally placed him during the year for which they are seeking reimbursement should not be considered in deciding the reimbursement claim since the appropriateness of the board's proposed placement should only be judged by what information the board possessed before the school year began. However, that information necessarily is before the ALJ or reviewing court in deciding the propriety of the IEP and proposed placement for the following year. While presumably a judge can draw the required distinctions, the difficulties inevitably encountered in distinguishing between the evidence that can be considered in deciding the separate claims are easily avoided if, in accordance with the express language of the regulations, a school board initiates a due process hearing as soon as the parents dispute its placement decision and decline to waive any claim for reimbursement.

Of course, in upholding the validity of the regulations giving CCPS the right to initiate a due process appeal, I am expressing no view on the underlying merits of the dispute concerning Adam's proper placement. That is a matter remaining to be decided. However, the IDEA and the regulations promulgated under it contemplate that when disagreements between parents and school boards concerning placement decisions arise, they will be resolved by an ALJ (subject to judicial review). There is no question that the disagreement between CCPS and the Yates' is real, and CCPS has done nothing more than seek its resolution in accordance with the governing statutory and regulatory scheme.

A separate order follows.

## ORDER

For the reasons stated in the accompanying Opinion, it is, this 1st day of August 2002

ORDERED

1. Defendants' motion for summary judgment is granted;

2. Plaintiffs' motion for summary judgment is denied; and

3. Judgment is entered in favor of defendants against plaintiffs.