**DORIS DAY ANIMAL LEAGUE, et al., Appellees,**

v.

**Ann M. VENEMAN, in her official capacity as Secretary, United States Department of Agriculture, et al., Appellants.**

No. 01–5351.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 2002.

Decided Jan. 14, 2003.

John S. Koppel, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were Roscoe C. Howard, Jr., U.S. Attorney, and Michael Jay Singer, Attorney, U.S. Department of Justice.

Christine M. Cooper was on the brief for amicus curiae American Kennel Club, Inc., in support of appellants.

Andrew C. Kimbrell, pro hac vice, argued the cause for appellees. Joseph Mendelson III was on the brief.

Before: RANDOLPH and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Hundreds of thousands of dog breeders throughout the United States raise and sell puppies from their homes. The Animal Welfare Act requires certain animal "dealers" to be licensed and to submit to inspections. The Act, which is administered by the Department of Agriculture, exempts "retail pet stores" from these requirements. The Secretary defines "retail pet store" as "any outlet where only the following animals are sold or offered for sale, at retail for use as pets: Dogs, cats, rabbits, guinea pigs, hamsters, gerbils, rats, mice, gophers, chinchilla, domestic ferrets, domestic farm animals, birds, and coldblooded species." 9 C.F.R. § 1.1. The effect of this regulation is to exempt breeders who sell dogs as pets from their residences. The issue is whether the regulation is valid.

Doris Day Animal League, a membership organization, filed a rulemaking peti-

tion with the Agriculture Department, urging a change in the regulatory definition of "retail pet store" so that residential operations would not be exempted. The Secretary published the petition in the Federal Register (62 Fed.Reg. 14,044 (Mar. 25, 1997)) and received more than 36,000 comments. When the Secretary announced that he would retain the definition, and stated the reasons why, 64 Fed.Reg. 38,546 (July 19, 1999), Doris Day Animal League and other organizations and individuals concerned about the mistreatment of dogs brought this action for judicial review.

The Animal Welfare Act, 7 U.S.C. § 2131 *et seq.*, seeks to insure the humane treatment of dogs (and other animals) raised and sold at wholesale and retail for research, for exhibitions, for hunting, to serve as guard dogs, and to be pets. *Id.* § 2131(1). Animal dealers must obtain licenses, they must comply with standards governing the handling, care, treatment, and transportation of the animals, and their facilities may be inspected for compliance. *See id.* §§ 2133, 2143, 2146(a). The Act defines "dealer" to exclude "a retail pet store except such store which sells any animals to a research facility, an exhibitor, or a dealer." *Id.* § 2132(f)(i). The Act does not define "retail pet store." Pursuant to rulemaking authority in 7 U.S.C. § 2151, the Secretary promulgated the regulation, quoted above, defining "retail pet store." The regulation's basic definition of "retail pet store" to mean "any outlet," without distinguishing homes from traditional business locations, dates back to 1971. *See* 36 Fed.Reg. 24,919 (Dec. 24, 1971) (§ 1.1(t) of the regulations: " 'Retail pet store' means any retail outlet where animals are sold only as pets at retail.").

The district court viewed the meaning of "retail pet store" as plainly not including one who sells dogs for use as pets from his residence, and therefore held the regula-

tion invalid. *Doris Day Animal League v. Veneman,* No. 00–1057, mem. op. at 15 (D.D.C. July 30, 2001). The court relied on the specific exemptions in the definition of "dealer" in 7 U.S.C. § 2132(f) and the licensing exemption of § 2133.

There is no need to repeat the standards for reviewing an agency's interpretation of a statute it alone administers. *See Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n,* 194 F.3d 72, 75–77 (D.C.Cir. 1999). The question is what "retail pet store" in § 2132(f)(i) means, or more precisely, what Congress intended it to mean. Those who sell dogs as pets to consumers from their residences are selling pets at retail. But is a residence a "store"? One usually thinks of a store as a business open to the public and engaged in the sale of goods. But not all stores are open to the public and not all stores are located in shopping malls or other typical business locations. If a homeowner raised dogs; set up a separate place on his property – say, for instance, a small building; installed a counter and a cash register; displayed leashes, collars, and other dog paraphernalia for sale; and advertised the sale of puppies at his address, it would not be much of a stretch to view this too as a store. The local zoning authority might also view the matter that way.

The government cites a dictionary to show that treating residences as "retail pet stores" is possible. One definition of "store" is "a business establishment where goods are kept for retail sale." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2252 (1986). But what is a "business" and what is an "establishment"? A "business" is a "commercial or mercantile activity customarily engaged in as a means of livelihood," *id.* at 302, and an "establishment" is a "more or less fixed and usu. sizable place of business or residence together with all the things that are an essential part of it."

*Id.* at 778. WEBSTER's lexicographers thus might say that because a residence can be a "business establishment," a residence can be viewed as a "retail pet store" if dogs are sold there. Those at BLACK's LAW DICTIONARY (7th ed.1999), would get to the same conclusion by a more direct route. BLACK's defines "store" as a "place where goods are deposited to be purchased or sold." *Id.* at 1432. Residences are of course places and dogs can be considered "goods." Still, we do not pretend these dictionaries, or any others, provide a complete refutation of plaintiffs' contention that the so-called plain meaning of "retail pet store" excludes residences, or that the opposite is what Congress clearly had in mind. Whatever the printed dictionaries say, we cannot be sure what was in the mental dictionaries of the members of Congress. And so we will move on.

Both sides rely on statements from the legislative history of the Animal Welfare Act. The government and *amicus* American Kennel Club, Inc., say the legislative history reveals that the emphasis of the Act was on regulation of wholesale, not retail, sellers of animals. Plaintiffs point to other statements suggesting that the exemption for retail pet stores should be construed narrowly. In the end we can find no solid evidence showing that Congress came to any conclusion about the issue we face, one way or the other.

Plaintiffs' more serious claim, one that convinced the district court, rests on the structure of 7 U.S.C. § 2132(f), the provision defining "dealer." The definition of "dealer" has two exceptions. The first we have already mentioned: it provides that "dealer" does not include a "retail pet store" (unless the animals are sold to a research facility, exhibitor, or dealer). *Id.* § 2132(f)(i). The second excludes from the definition of dealer "any person who does not sell, or negotiate the purchase or sale of any wild animal, dog, or cat, and

who derives no more than $500 gross income from the sale of other animals during any calendar year." *Id.* § 2132(f)(ii). One of plaintiffs' arguments is that by not giving sellers of dogs a *de minimis* ($500) exemption in subsection (ii), Congress meant to make sure that those who sold dogs from their homes remained covered by the Act no matter how much income they generated. But the argument begs the question. If subsection (i) already gave an exemption to residential sellers of dogs as pets (because they were "retail pet stores"), there was no need to give them a *de minimis* exemption in subsection (ii). Plaintiffs also point out that if Congress had wanted to exempt individuals selling dogs from their homes, it could easily have written subsection (i) to cover "any person" rather than "retail pet store," as it did in subsection (ii). The argument is weak. It may be countered by arguing that if Congress wanted to exclude residential sellers from the definition of retail pet store it easily could have said as much. The argument is, in any event, one that can be made in any case in which there is a fair dispute about the meaning of a statute. Often it is put this way: Congress knows how to say thus and so, and would have written thus and so if that is what it really intended. This proves very little. Congress almost always could write a provision in a way more clearly favoring one side – or the other – in a dispute over the interpretation of a statute. Its failure to speak with clarity signifies only that there is room for disagreement about the statute's meaning.

Plaintiffs also direct us to the licensing exemption contained in § 2133. The relevant portion reads:

any retail pet store or other person who derives less than a substantial portion of his income (as determined by the Secretary) from the breeding and raising of dogs or cats on his own premises and

sells any such dog or cat to a dealer or research facility shall not be required to obtain a license as a dealer. . . .

The argument is that § 2133 reflects two separate and distinct licensing exemptions for dog sellers: "retail pet stores" and "other persons." The second category, plaintiffs continue, "does not apply to persons who sell dogs or cats to consumers for use as pets from their own premises." Therefore Congress intended to keep the categories separate, while the regulatory definition of "retail pet store" lumps them together.

We will assume that the "other person" clause applies only to those persons who are selling dogs and cats to dealers and research facilities, rather than to consumers who want the animals for pets. Even so, we cannot see how this helps plaintiffs' contention that the plain meaning of "retail pet store" does not include residences. Plaintiffs read the qualification – breeding and raising dogs and cats, on the person's premises, as a result of which he does not derive a substantial part of his income, and selling to dealers and research facilities – to refer only to "other person," not to "retail pet store." Because of the disjunctive "or" in the passage, *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 1234, 152 L.Ed.2d 258 (2002), supports their interpretation. But even if plaintiffs are correct about what § 2133 means, which we need not decide, those "other" persons are not within the Secretary's definition of "retail pet store" for the obvious reason that they are not selling at retail. Under the regulation, residential retail sellers, like traditional pet stores, are exempt from licensing regardless of whether they make a substantial part of their income from this activity. If the Secretary's interpretation of "retail pet store" is correct, it would have been senseless for Congress to add retail residential sellers in the "other person" clause of § 2133; that would have created a redun-

dancy, or an overlap between the two classes exempt from licensing. Given the regulation, a residential seller may sell an unlimited number of dogs to the public as pets, but he may sell outside of retail channels only if his sales of dogs are less than a substantial portion of his income. The regulation thus preserves both parts of § 2133, allowing each to operate in its sphere.

■ While the regulation's definition of "retail pet store" does not exactly leap from the page, there is enough play in the language of the Act to preclude us from saying that Congress has spoken to the issue with clarity. From what we can make out, Congress has paid little attention to the question posed in this case. Still, it is true that in the years since passage of the Act and the Secretary's adoption of the regulation, Congress has not altered the regulatory definition of "retail pet store" although it has amended the act three times. One line of Supreme Court cases holds that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846, 106 S.Ct. 3245, 3254, 92 L.Ed.2d 675 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974)). The quotation fits this case perfectly. *Compare Alexander v. Sandoval*, 532 U.S. 275, 292, 121 S.Ct. 1511, 1522–23, 149 L.Ed.2d 517 (2001), refusing to find that Congress, through silence, had endorsed a judicial interpretation of a statute. *But see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381–82, 102 S.Ct. 1825, 1840–41, 72 L.Ed.2d 182 (1982).

■ This leaves the argument that the Secretary's resolution of the meaning of "retail pet store" is not a reasonable one. In our judgment the Secretary's decision and policy statement declining to modify the regulation is supported with reasoning that is persuasive and faithful to the Act's purpose of protecting animal welfare. *See generally* Licensing Requirements for Dogs and Cats, 64 Fed.Reg. 38,546 (July 19, 1999).

The Secretary spelled out several policy considerations thus:

> Second, we have determined that retail dealers, especially those who sell from their homes, are already subject to a degree of self-regulation and oversight by persons who purchase animals from the retailers' homes, as well as by breed and registry organizations. Breed and registry organizations, such as kennel clubs, require their registrants to meet certain guidelines related to the health and genetic makeup of animals bred and to the education of the registrants. These organizations also monitor the conditions under which animals are bred and raised. Wholesale dealers typically do not have this type of oversight from the public.
>
> . . . .
>
> Fourth, retail outlets are not unregulated. There are already many State and local laws and ordinances in place to monitor and respond to allegations of inhumane treatment of and inadequate housing for animals owned by private retail dealers. If we were to regulate these dealers along with State and local officials, it would clearly not be the most efficient use of our resources.

*Id.* at 38,547. While plaintiffs are unhappy about the degree of self-regulation and the amount of oversight from local humane societies, kennel clubs, and state agencies, the Secretary, applying his expertise, was entitled to rely on these factors in making his judgment about the need for federal regulation. And he was entitled also to differentiate retail sales from wholesale sales of dogs on the basis that "wholesale dealers typically do not have this type of oversight from the public." *Id.*

The Secretary also declined to amend the definition on the ground that the best interest of animal welfare is supported by allowing the Department to "concentrate [its] resources on those facilities that present the greatest risk of noncompliance with the regulations." *Id.* The Department has decided to focus on wholesale dealers, where its resources are likely to yield the greatest benefit. This is a reasonable choice, keeping in mind the purpose of the Act to promote animal welfare. *See Envirocare,* 194 F.3d at 77–78. It was also within the authority delegated to him by Congress for the Secretary to decline to amend the definition in light of the potential invasions of privacy that would result if federal inspectors began enforcing "cleaning, sanitation, handling, and other regulatory requirements in private homes." 64 Fed.Reg. at 38,547.

Taken together, the Secretary's decision to retain the regulatory definition of "retail pet store" reflects the judgment of the agency entrusted with administering the Animal Welfare Act to fulfill the purpose of the Act as effectively as possible. For the reasons given, the regulation is a permissible construction of the statutory term "retail pet store."

The order of the district court granting partial summary judgment to the plaintiffs and declaring the regulation invalid is therefore

*Reversed.*