RANDOLPH, Senior Circuit Judge,
dissenting:
I would deny the petition.
The Commission’s interpretation fits comfortably within the language of § 4412(b)(2). Before the hearing order of September 26, 2006, the carriers (through the Quality Bank Administrator) were legally required to apply, and the quality bank participants obligated to pay, one adjustment for the heavy distillate cut. After that order, they were legally required to apply another. It follows that the September 26 order “imposfed]” an adjustment within the meaning of § 4412(b)(2), or at the least, the Commission reasonably thought it did so.
The majority opinion rejects the Commission’s interpretation on the basis that it violates “conventions of ordinary discourse.” Maj. Op. at 546. Agency orders dealing with quality bank adjustments on the Alaskan pipeline do not strike me as the subject of “ordinary discourse.” The majority explains that the Commission was not “imposing” anything because it had no discretion to adopt a rate other than the one the carriers proposed. I do not see why this discretionary element is an essential ingredient of “imposing” an adjustment within the meaning of § 4412(b)(2). Our court has spoken of a district court “imposing” a mandatory sentence — that is, one that it was legally required to give. See, e.g., United States v. Gaviria, 116 F.3d 1498, 1512 (D.C.Cir.1997). The hearing order gave the carriers’ proposed rate legal sanction. This is all that § 4412(b)(2) can be read to require.
Nor do I see why the fact that the carriers’ proposed rate would, under the tariff, automatically take effect if the Commission took no action should affect this conclusion. As I read the tariff, after a filing of a notice of radical alteration, the Commission may either issue an order imposing the carrier-proposed rate (possibly subject to hearing) or the carrier-proposed rate will take effect after sixty days. The existence of the second option does not make the first less of an imposition.
The majority also believes — incorrectly in my view — that the Commission’s interpretation rendered § 4412(b)(2) meaningless. In the Commission’s view, Congress enacted § 4412(b)(2) “to prevent a recurrence of the prospect of a lengthy refund period caused by extensive litigation over an unlawful order.” 125 FERC ¶ 61,254 P 20. The legislative history cited in the *550 majority opinion, Maj. Op. at 545-46, indicates that Congress was particularly concerned with the extended periods of retro-activity made possible by litigation in the court of appeals and intended to limit the incentives to litigate Commission orders created by the possibility of such retroactivity. See, e.g., 151 Cong. Rec. S3752 (daily ed. Apr. 15, 2005) (statement of Sen. Murkowski). The Commission’s interpretation may not be plain from the text of § 4412(b), but all indications are that Congress wanted somehow to limit retroactive changes in quality bank proceedings. The Commission’s interpretation achieves this purpose, and it does so in a rational manner. That is enough.
The majority has this response to the Commission’s “unlawful order” interpretation: if Congress was concerned with this scenario, it would have addressed it more specifically in § 4412. This sort of argument, which is often deployed, has very little force for reasons we have explained. “Congress almost always could write a provision in a way more clearly favoring one side — or the other — in a dispute over the interpretation of a statute. Its failure to speak with clarity signifies only that there is room for disagreement about the statute’s meaning.” Doris Day Animal League v. Veneman, 315 F.3d 297, 299 (D.C.Cir.2003). Under Chevron the fact that Congress has left certain terms unspecified should count for the agency, not against it. The Commission’s interpretation is a reasonable reading of the text, even if we would not adopt it under a de novo standard. See Chevron, U.S.A, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
I therefore respectfully dissent.